UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM COWAN,

        Plaintiff,                                Case No. 2:15-cv-12428
                                                      District Judge Gershwin A. Drain
v.                                                     Magistrate Judge Anthony P. Patti

TRENT MILLER, *et al.*,

        Defendants.
_____/

## REPORT AND RECOMMENDATION TO DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DE 14)

**I.    RECOMMENDATION**: The Court should deny Defendants' motion for summary judgment, because Plaintiff fully exhausted his administrative remedies in compliance with the Michigan Department of Corrections' ("MDOC") policy.

**II.    REPORT**

    **A.    Background**

Plaintiff, William Stokes Cowan, Jr., an inmate at the Chippewa Correctional Facility who is proceeding without the assistance of counsel, filed his complaint on July 2, 2015 and his application to proceed without prepayment of fees on August 3, 2015. (DE 1 and 5.) The Court granted Plaintiff's application on August 10, 2015. (DE 6.) In his complaint, Plaintiff brings claims under 42

U.S.C. § 1983,[1] asserting that Defendant Trent Miller violated his rights under the First, Eighth, and Fourteenth Amendments by refusing to serve him a Ramadan meal, causing him to experience life-threatening hypoglycemia.

Plaintiff is a Type 1 diabetic. According to his pleading, missing a meal can cause hypoglycemia, which he describes as "body cells . . . deprived of glucose" leading to "sweating, nausea, anxiety, rapid forceful heartbeats, complete confusion, slurred speech, and unsteady movement." (DE 1 at 7.) In addition, Plaintiff notes that the condition can cause blurred vision, black-outs, brain damage, or death if not treated promptly.

Plaintiff explains that on July 2, 2014, Defendant Miller refused to provide his morning Ramadan meal. (DE 1 at 8.) Later that day, he awoke to being "manhandled and surrounded by at least seven correctional officers." (Id. at 7.) After restraining Plaintiff to the point of shoulder injury, the officers called health services, and a diagnosis of hypoglycemia was confirmed. (Id. at 8.)

He asserts that Defendant Miller took this action deliberately in retaliation for other, unnamed conduct. He also alleges that Defendant Jeffery Woods failed

---

[1] Plaintiff specifically notes that he brings this civil action pursuant to 84 U.S.C. 42 § 200, which does not exist in the United States Code. The causes of action raised in the complaint involve the deprivation of rights, privileges, and immunities secured by the Constitution and laws, and such an action is properly brought pursuant to § 1983. *See* 42 U.S.C. § 1983. Moreover, as Defendants point out, Plaintiff cites to *Cruz v. Beta*, 405 U.S. 319 (1972), an action brought pursuant § 1983.

to investigate Defendant Miller's actions. Finally, he names the MDOC as a Defendant, asserting that it is liable for hiring "heartless staff members." (DE 1 at 5.) Plaintiff asks the Court to remove Defendant Miller as a corrections officer and call for an outside investigation into the facility, as well as compensation of $1.5 million for pain and suffering.

### B. The Instant Motion

Defendants Miller and Woods filed the instant motion on October 9, 2015. They assert they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies. As evidence, Defendants provide Plaintiff's July 2, 2014 grievance (URF 14-07-2091-17A) and his July 4, 2014 grievance (URF 14-07-2127-26I), both of which describe Officer Miller's failure to provide Plaintiff with his Ramadan meal on July 2, 2014. (DE 14-2 and 14-3.) Defendants assert that those reports are only grieved through Step II. Defendants also provide a list of grievances exhausted by Plaintiff, along with an affidavit of Jordan Garza, student assistant, certifying that the list is a true and accurate copy of the report. (DE 14-4.) Finally, they provide the MDOC grievance policy, which outlines the steps an inmate must take to fully grieve an issue.

Plaintiff opposes the motion. In his response, Plaintiff asserts that the grievances attached as exhibits to Defendants' motion were, in fact, fully exhausted as evidenced by the record. He notes that on July 3, 2014, he "issued a

complaint to the warden, the deputy warden, the inspector, internal affair[s], and the civil service commission" in addition to the grievances he filed. (DE 17 at 2.) Plaintiff contends that the additional complaint served to exhaust his administrative remedies.

Defendants filed a reply on November 4, 2015. (DE 18.) They reiterate their initial arguments and assert that Plaintiff "does not seriously dispute the fact that he failed to exhaust to Step III" in his response. (Id. at 2.)

Plaintiff filed an unsolicited sur-reply on November 12, 2015, in which he disputes the grievances relied on by Defendants and again asserts that he exhausted his administrative remedies. (DE 19.) He specifically points to URF-14-07-2127-26I, noting that Defendants' evidence shows that the matter was fully exhausted. (Id. at 1.) Although the brief was filed in violation of Eastern District of Michigan Local Rule 7.1(d)(1)(A), I will consider it in this instance, but Plaintiff is cautioned that future filings that violate the Local Rules may be stricken.[2]

### C. **Standard**

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

---

[2] Plaintiff is also directed to Magistrate Judge Patti's Practice guidelines, which provide that "[a]dditional briefing, including sur-replies, will NOT be permitted unless requested by the Court. The Court will strike any improperly filed sur-replies or other briefing not contemplated by the Local Rules." *Motion Practice Guideline*, available at
https://www.mied.uscourts.gov/index.cfm?pageFunction=chambers&judgeid=51.

fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence

upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). Summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

### C. Discussion

The record reveals that Plaintiff exhausted his administrative remedies through Step III with respect to grievance URF-14-07-2127-26I. Accordingly, Defendants' motion should be denied.

#### 1. Exhaustion Under the PLRA

Under the PLRA, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted this provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007). Put another way, the purpose of

§ 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotations and citations omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought into court." *Jones*, 549 U.S. at 211. The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 219 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). The prisoner "may not exhaust his [or her] administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 US at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .").

7

However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA. As such, Defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012).

      2**.**     **Grievance Procedures at the MDOC**

Pursuant to its Policy Directive dated July, 9, 2007, the administrative remedies available at the MDOC are as follows. First, the inmate must attempt to resolve any issue with the staff member involved within two days of becoming aware of a grievable issue. (DE 14-5, ¶ P.) If the issues are not resolved within five days, the inmate may file a Step 1 grievance using the appropriate form. The inmate should receive a response within fifteen days of filing his or her grievance. If the inmate is dissatisfied with the disposition of the grievance, or does not receive a response ten days after the due date, he or she may file a Step II grievance using the appropriate form. (Id. at ¶ BB.) Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response for ten days after the response was due, he or she may file a Step III grievance. (Id. at ¶ FF.) Step III grievances are "logged on a computerized grievance tracking system." (Id. at ¶ GG.) The matter is fully exhausted after the disposition of the Step III

grievance. *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

### 3. <u>**Plaintiff Pursued His July 4, 2014 Grievance to Step III**</u>

Here, as acknowledged by Defendants, there were two grievances relating to the events described in his complaint. (DE 18 at 2.) The first (URF-14-07-2091-17A) is dated July 2, 2014, in which he notes that he "explained to Officer Miller that he was in violation of the First, Eighth, and Fourteenth [amendments] for not allowing me to eat." (DE 14-2 at 2.) On July 4, 2014, the grievance was denied, with a statement that "Prisoner Cowan wishes to go to step II." (Id. at 4.) Plaintiff filed his Step II appeal on July 14, 2014 and it was denied on July 22, 2014. (Id. at 6.)

The second grievance (URF-14-07-2127-26I) is dated July 4, 2014 and also describes Defendant Miller's refusal to provide Plaintiff's Ramadan meal on July 2, 2014.[3] (DE 14-3 at 2.) Specifically, Plaintiff explains that he suffers from hypoglycemia and asserts that "Officer Miller tried to murder" him by "denying the morning Ramadan meal." (Id. at 3.) He notes that he "awoke to being

---

[3] Defendants attempt to differentiate between these grievances, indicating that URF-1407-2091-17A involved the "denial of his Ramadan meal," whereas URF-1407-2127-26I involved "Miller's intent to kill him." (DE 18 at 2.) However, both grievances (and especially Plaintiff's attachments to the grievances) describe the same event: Defendant Miller's alleged refusal to provide Plaintiff a Ramadan meal and the resulting medical problems suffered by Plaintiff on July 2, 2014. Both of the grievances, on their own, adequately describe the events outlined in Plaintiff's complaint.

manhandled and surrounded by a[t] least seven correctional officers." (Id. at 2.) The language used in this grievance is nearly identical to that in his complaint, in which he states that he "awoke to being manhandled" and that "Officer Miller tried to murder [him] by causing [his] blood sugar levels to drop" by "den[ying] [him] the morning Ramadan meal. . . ." (DE 1 at 7-8.) This grievance was denied on July 16, 2014, with a note that Plaintiff did not report to the Officer station to receive his meal in the time allotted. (Id. at 4.) Plaintiff filed a Step II appeal on July 25, 2014, which was denied on August 6, 2014. (Id. at 5-7.)

Defendants assert that Plaintiff has not filed any Step III appeals with respect to the above grievances. They provide as evidence Plaintiff's "MDOC Prisoner Step III Grievance Report" from May 2009 through the present. (DE 14-4.) The report contains a sworn statement from a student assistant, presumably an intern, attesting that it is a "true and accurate copy of the report generated for William Cowan #229059 from the Michigan Department of Corrections database that tracks all prisoner/parolee grievances filed at Step III." (DE 14-4 at 2.) The report contains a total of three Step III appeals.

One of the appeals, labeled URF-**14-07-2127**-12z, indicates that the Step I grievance was received on July 7, 2014, the same date that Plaintiff's July 4, 2014 grievance is stamped as received. (DE 14-4 at 3 and DE 14-3 at 2.) The Step III response to that grievance (which is only identified as "URF **14072127**"), states the

following: "Grievant is alleging unnecessary force treatment and unprofessional conduct by staff during an incident on July 2, 2014." (Id. at 9.) The affiliated Step I and Step II grievance and response are identical to those included with URF-**14-07-2127**-26I. (*Compare* DE 14-3 at 2-7 and 14-4 at 12-17.) Notably, Plaintiff attaches to his complaint his Step III appeal with respect to grievance URF-**14-07-2127**-26I. (DE 1 at 10.) Accordingly, despite the Step III appeal being labeled slightly differently on the Step III Grievance Report (URF-**14-07-2127**-*12z* as opposed to URF-**14-07-2127**-*26I*), it refers to the July 2, 2014 incident described in Plaintiff's complaint.[4] Defendants' own evidence, therefore, establishes that Plaintiff fully exhausted this incident through Step III in compliance with the MDOC policy.

Defendants do not address any of these documents in detail in their initial motion or reply. Nor do they assert that the appeals were improper or untimely in any way, and there is no indication in the record that Plaintiff failed to follow the MDOC policy with respect to this grievance and the associated appeals. As such, Defendants' motion for summary judgment should be denied because he fully exhausted his administrative remedies with respect to his July 4, 2014 grievance.

---

[4] It is unclear why the three-digit/letter suffix of these grievance numbers differ, but the rest of the numerical sequence is the same. In any case, the responsibility for assigning such file numbers would necessarily fall upon Defendants.

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: April 27, 2016                s/Anthony P. Patti
                                     Anthony P. Patti
                                     UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on April 27, 2016, electronically and/or by U.S. Mail.

                                     s/Michael Williams
                                     Case Manager to the
                                     Honorable Anthony P. Patti